Are you all alone here? Okay. Very good. I wish I was alone. It might make it easier. I'm sorry. Every counsel's dream. All right. Well, hey, it's great to be here. May I please record, Mr. Hunter? Your name? Kurt Nehrman. I'm proud to represent Deborah Souvenir in what was purely a legal error in the ruling. I attached a copy of the accident site to my opening brief, 827. Ms. Souvenir, let me ask you a threshold question. Yes, sir. Is this one of those rare cases where the de novo standard of review applies? It does. Why is that? Because the judge, the arbitrator, the commission affirmed, said that there are few factual disputes on the condition of the property or the sequence of the events for the accident. She was ruling largely on a legal issue. I agree with that. She applied the rising out of test to the case. She actually went and pointed some policy concerns that she had in the ruling and ruling in my client's favor, such as, you know, if we consider this curb to be a defective or hazardous condition, what will employers do in this state that's going to create an uncontrollable liability problem for them? That's an issue for the legislature. That's not an issue for the commission. What she did accept from my client's presentation in a large, largely unrebutted sequence of how everything happened was there was a height differential between the backside of the curb and the ground level within the curbed area. My client didn't see it, and actually the grass compressed when she stepped on it, revealing the differential. She tripped over that differential into the parking lot beyond the curb. So that's the crust of your argument. You're not arguing that the curb itself is defective, correct? It's that differential. The concrete was not defective. But the height differential has to qualify as a hazardous or risky, you know, condition. For purposes of workers' compensation, because as you know, we're not doing a common law case where we have to provoke duties, de minimis, standards, concerns about saving the people's assets from, you know, unfettered litigation and liability on behalf of the workers. So what you're saying in the mechanics of the injury is that she apparently got out of her car, put her left foot over the curb onto the median. And then she proceeded to, with her right foot, then hit the curb and fell. She did. Okay. So that's the mechanics. I'm trying to get this picture clear. Yeah. That's the mechanics of the injury. I think what happened was left foot out of the car onto the curb or into the median, I should say. Into the median. Yes. She goes forward with her right foot, stepping on the grass, which compresses, showing or revealing that differential. She caught the tip of her right foot on that curb, fell into the parking lot beyond. So it was actually the dragging, so to speak, or the coming in contact with the curb by the right foot. Correct. That created the imbalance that led to her fall. Correct. She didn't see the imbalance before she proceeded by that. There's no contrary evidence. Nothing important or relevant, although she saw it. I agree. I agree. Your argument is differential. And you would probably argue analogously it would be no different than a differential in one segment of a concrete versus another segment of a concrete on a segmented concrete walk. I would, I would, you mean. Where the left foot goes on the higher one. Sure. And the right foot. Well. The right foot hits the differential, the height, and trips. The weight, yes. If you're saying that it was not designed in that fashion where the concrete was offset, if it was not designed that way and somehow it came to be that way over time. Then you would argue defect. Absolutely. Absolutely. In this case, it's even better, though, because I have a latent defect because I have grass obscuring the differential. So her cognizance of what's there does become relevant because she didn't anticipate, according to the arbitrator, according to the commission, she did not anticipate that the differential was there. But the commission said, well, she should have known better. You know, people should know that grass compresses when you step on it. Okay. Chairman, I have to ask you this question. Yeah. Is there any case law or wrestling with the issue, case law authority supporting the proposition that the curb must be level with the surface of the bus, otherwise it's defective or hazardous allowing recovery? Absolutely not. There is no case law that I'm aware of that requires any kind of a specific differentiation in height levels, quantities of risk, exposures to risk before someone's entitled to benefits. The question is whether or not there's a differential, whether or not there's something that's hazardous for that individual at that time on the employer's premises. And in this case, there's no doubt. She didn't anticipate it. She tripped over it. So the question becomes, is there a legal bar to someone getting their benefits for this differential which she couldn't anticipate? My response is it can't be a legal bar because if it is, then we've thrown de minimis. Why is Caterpillar not controlling on this? What's the difference? I mean, obviously Caterpillar doesn't have a median. It doesn't have grass and then a curb with no defect on the curb. Right. But at Caterpillar, you have a curb and then you have not a clear step down to the pavement, but you have a concrete slope. Right. Okay. So why is that? As I understood it for the setup, we had stepping down off the curb, there's a sloped area pavement. Right. So that's the way it was designed. Okay. Not that that's terribly relevant either. But what's different about Caterpillar is I went back and read it today because I figured you would be asking me about that. The Supreme Court noted that there were no findings of fact by the commission as to mechanical causation. They didn't determine mechanical causation, but they said there were no findings of fact mechanically, causally relating the fracture, the malleolus, to that curb slope, you know, pavement interface. So the commission totally missed the causal analysis in their factual findings. That's why the Supreme Court felt the liberty to reverse because not all the elements had been proven up in the case. You saw what they did in that case. Lawsuit arbitration commission reversed in the workers' favor. Circuit court upholds. Appellate court upholds. Supreme Court says, as a matter of law, you haven't proven up your case. What we usually cite the cat for, though, are the arising out of elements, you know, the assigned duties, incidental duties, common law or statutory obligation type duties. And additionally, though, they said they give us what I think you turned into your expansion of neutral risk in 2015. You know, is there an exposure also? Is there an exposure beyond what the general public finds if it's not one of those three categories? And that was the subject of the discussion up at the Supreme Court a month ago in McAllister. They were talking about that specifically because cat tells us we've got the three assigned, you know, assigned, incidental, common law or statutory duties. Also, you can win benefits if you're exposed to a risk more than the general public. Okay? So in our case, though, you told us in Dukic that differentials in height do not qualify as neutral risk cases. So neutral risk should never have been a concern for the judge or the arbitrator, the commission in my case, nor should unsolvable liability problems, nor should whether or not my client was intelligent enough or observant enough to see whether or not there was a differential. The fact is she didn't anticipate it. It was her first day at work. She was excited. She trips over the thing. She gets hurt. Anticipation has nothing to do with it. Well, I agree. I agree. I agree. But the reason I think it's even more compelling than that is because latent defects potentially give rise to common law liability. In that setting, I have to prove up a duty, right, a common law duty. Here I have a statutorily imposed duty. Employers take care of their employees for things related to work injuries. So in this case, she trips over this thing. They're responsible for it. But the fact that the grass compresses, she didn't anticipate it, you know, the same thing. I'm still having a problem. I know. I know. I don't think we need to throw strange words into a simple analysis. That's where we go crazy. Right. No, I agree. I mean, she encounters. She did. And you're saying she encountered a risk. And tripped over it. Yeah. And that's how she got hurt. This case is fairly distinguishable from the counter-killer because the counter-killer, the court concluded, the injury did not result from the condition of the employer's premises because there was no evidence that the curb was hazardous or defective. You're saying the curb has nothing to do with this. It's the height differential. That's exactly right. It's always been that. Yeah. We have no practice. It's the height differential between a curb and a median. Is the median a walkway? The median is the ground in between the curb. On 827, I have a picture. There's a nice circle. There's a ground level in there that's this much lower than the backside of the curb. Is it a walkway? Well, it is. When you don't, when you have a parking lot where you park right up against the curb, stepping out onto the thing. She's an older lady. Stepping out into the median, which is an easier step than stepping down the ground. And then you have to trans, you have to go across that to get to where you're going to go, to get to the front door. Well, she could park so close to the curb that she could get between the curb and the car. That's true. But if we're faulting her for her choice of parking spots or where she parked within that slot, now we're bringing fault back into the analysis, which I don't think is where we're supposed to be. But there has to be a defect in the employee's premises. Yeah. And I'm trying to figure out where the defect is because there's a differentiation in height between a median and a curb. A median is not a walkway. A median is a grassy area. They plant grass there. You look at it, it looks nice. It divides areas. But it's not a walkway. Right. And so if it's not a walkway and there's a differentiation in height between the curb and this non-walkway, what's hazardous about the property? Because the way that the spot is located right up against the curb, there's no skirt, so you can't step down into the pavement and come around. So she parks right there. Nobody said don't park there. It's not a walkway. And the defect, Judge. The defect is something completely under the control of Dovenmuehl, and that is ground level, dirt level within this curbed area. All you do is throw some dirt in that level. So we should write an opinion saying all medians must, the dirt level must be the same height as surrounding curbs or they are defective in the event that a person should decide to walk across them. I don't ask you to go that broadly. What I would like to see. Well, we have to. I would be happy. I don't think that makes sense. I would be happy with a Rule 23, you know. I'm sure you would. No, no, just saying that the law applies to, this is clearly in a rising out of case. It does not apply to future cases. They rise and fall into facts. My case. Can I just clarification right there? Because I think we've come full circle on a point. I think in response to Justice Hudson, you indicated there's no authority or regulations that the differential, the curb height has to be. That was early on. You conceded that. Sure. None that I'm aware of. Okay. I want to make sure I was clear on that point. Yeah. Oh, so the differential judge is what makes this setup defective. And there was nothing saying don't step into the curb. There was no guidance against it. She was told to park in the parking lot. She chose the slot closest to the front door. It's all logical. Does it matter that it's foreseeable that this is, I guess, I'm introducing a little bit of a hypothetical, but sometimes spots are very narrow. Someone will almost have to step on median to get out of the car. Right. Right. Does that play into this? You know, if it's true that fault doesn't play a part in this system, then it doesn't make any difference how they lay it out. I mean, the fact is we know that they've got a curb right across from this that's flush. We know they can put more dirt in there. But who cares? It's a no-fault system. Yes, they could do that, but they didn't. But we've pulled some common law concepts into the parking lot cases. So in that spirit, I'm arguing we trip over a differential here she didn't anticipate. Why does that not qualify as a compensable injury under a no-fault system when I might win that under a latent defect theory in a common law case? Because one of the unintended consequences if this were reversed is that we would have uglier and uglier parking lots, no more green spaces. It would engender litigation. It would engender a lot of opportunity for people to try to win their cases. It's a great opportunity for people to try and get what are supposed to be pretty good. You're taking the lead on that one. I would be. I would want you to take the lead on that because I don't want credit for any of this. I just want to win my case. So the green people would not like your decision favoring you, right? Well, that's probably true. But I don't think they're in the act. I don't think that they're. So I'd ask that you reverse, please, and give her her de minimis value case. I don't think there's a whole lot to it, but, you know, it's the principle. She deserves something. So thank you. You'll have time to reply. Counsel, you may respond. Thank you, Your Honors. Casey Hunter on behalf of the Defendant Dovenville. Your Honors, this is we are arguing that this isn't a manifest weight standard to apply to this case. There are maybe a few factual disputes, but there are factual disputes. And you can look it to the record to see what the commission applied. The commission clearly said that they struggled greatly to understand the Petitioner's claim that there was a hazard or something wrong with the curb area. We also had witnesses who testified at trial who testified differently than what the Petitioner testified to. Well, there's no – is there a dispute here on your side that there was a height differential here? I mean, that's not seriously a dispute, is there? Well, the – Now, whether or not that carries today, obviously, is a separate issue. But you're not saying there's no height differential, are you? Correct, Your Honor. You can see from the picture that the grass and the curb are clearly not on the same level. I don't think anyone's – And that's the crux of the matter. Your Honor, this is only a test. The Illinois State Police is conducting a test of the facility's public address system. This is only a test. At this time in actual incident, you will be issued further instructions via the public address system. Again, this is only a test. Does that eat at my time, Your Honor? Well, I don't know. I don't know. They said it was a test for the public address system, and nobody's here to verify that it came through. It's a great test, isn't it? Should I proceed or leave? I mean, we could have never heard that. Yeah, they're not going to evacuate the courtroom. They should have somebody in the room saying, yeah, it worked. But anyway. All right, so you've just – You conceded there was a height differential. This differential was not – she did not say anything about this differential at the time of the accident. She does not say anything about this differential to Ms. Willis. Does she have to say anything about it? I know, Your Honor, but I think it goes to credibility and the nature of how – Well, she said she fell. That's correct. And you have one of the employer's employees that saw a scrape in the knees, right? No question she fell. We're not disputing that at all. What we are questioning is whether there was a defect or exactly what did she fall on or how did she fall on. I think there's factual disputes on that. And the Commission clearly made a finding that they didn't find any factual disputes based on the petitioner's testimony and the witness's testimony. And based on that – based on those findings, there's clearly enough to show that there is factual disputes in this case, that everything wasn't clearly adopted. So did they find she didn't fall? They did find that she did fall. She did fall. They did find that she was credible that she fell in the parking lot. That's correct. But how she fell, did she fall on? Did she initially report the defect on the time? You know, those are factual findings that the Commission found after reviewing for the witnesses and also the petitioner's testimony. And then they also look at the picture itself and find that there was no factual defects or hazards. And based on that, Your Honor – Well, why did they find there was no factual defects? Or, I'm sorry, no defects. Did they find a differential? Your Honor, they found that the differential was not a defect or hazard. I think they do review the picture of the curb. Everyone looked at the picture of the curb. It was the curb that the petitioner took herself. And they looked at it. They said they looked at it from every angle. And they struggled greatly to see how this differential caused any type of hazard. So there's a differential. Everybody agrees. Is there some de minimis rule they applied? I guess we're trying to find out what was the basis. Acknowledging a differential, his argument is that created a hazard in this individual circumstance. So what's wrong with his argument? Your Honor, I do think Caterpillar is the case to apply this. I know it's not exactly a curb-for-curb defect, but it is a curb case. Didn't they hold specifically in Caterpillar, not to interrupt, but didn't they hold that the curb was defective in Caterpillar? They did not find that the curb was defective in Caterpillar. They found that the curb wasn't defective. They found the curb wasn't defective. We can all agree that that's the case. Yes. But the nature around the curb, the analysis of whether there's a defect is still warranted in this case. It is important to apply a defective standard to see if there is a defect. Is there something the employer did to this area to cause a defect? And there was a lot of analysis, a lot of testimony taking. We have Ms. Wilk, who actually went to the scene to where she fell and inspected the area and did not find that the differential or there was any kind of defect present at the time. And she said it was, quote, safe, a safe area. Yeah. Well, those are all conclusions nicely made. But in Caterpillar, we're dealing with a walkway to a curb, street level, and there's a concrete slope. Correct. That's put there for water purposes or what. We're not sure. Nobody is sure, but it's there. And the nature of the fall was a person is walking, and normally when you see a street and you see a curb, you expect to step down to the street level. Instead, could not step down to the street level, but there was an incline, concrete incline, which created an imbalance that led to a fall. That's correct. And what Caterpillar does talk about in Caterpillar, and the same thing here, they indicate that there was no objective or a type of objective, excuse me, objective evidence or other types of situations that the opposing counsel could have brought in to show how that curb slope area is more dangerous than what the general public faces on a day-to-day basis. And they said that there was no evidence from opposing counsel to show that that slope curb was a dangerous defect or that the public faced a greater danger based on that mechanism of curb slope. Are you saying this is a neutral risk case? Judge, I'm arguing that this is a neutral risk analysis, that there's no greater risk to the public here in this case. Clearly, this curb is just like any other curb in an island in a parking lot that the public faces on a day-to-day basis. Because we're really not talking about the curb, because the curb is found to be not, I think, or at least ultimately it's nothing defective. There's no cracks, no chips, whatever. The curb has a normal curb height you would expect. Well, that's another point, Your Honor. We don't have any evidence from the parties of what a normal curb should be or what a defective curb should be or how dangerous this curb is from the other curb. That's a very important fact in this case, that there was no objective evidence that came in. Counsel talks about an inch and a half, but this is an inch and a half measurement that his client looked at from a picture, the same picture that the Commission looked at, the same picture Your Honors have looked at. There was no measurements. There was no any inspection, expert reports taken of that area itself. So we don't really have credible objective evidence of what those measurements were or to even kind of compare it to any other curb to show how it's more dangerous or not dangerous. And without that information, there's no, it's impossible to show. Well, do we have a finding there was, by the Commission, there was no defect in the curb? That's correct. Okay. Are you trying to say that there was something faulty in that? I don't think you want to argue his position. No. No. My point, Your Honor, is I apologize. Okay. So let's start with the fact that they made a finding. Nobody's debating it. Correct. That this was not a defective concrete floor curb. Yes, Your Honor. Okay. They went further than that. Pardon? They went further than that. They said there's simply no defect. The damage in the nature of the parking garage, the grass, or the curb. They found no defect anywhere. That's correct. There's no defect. And they indicate that they looked at the picture from every angle, and they also struggled to understand how the grass constituted a defect. So they definitely go with it. But they also comment that they are not faulting the Petitioner in any way, any kind of negligence aspect. That's irrelevant. I don't know where we got that song and dance from. Okay. But the bottom line, we're trying to focus on some specifics here, right? That's correct. And so they, there was no dispute that there was a differential in height between the grass in the medium and the height of the curb. The Petitioner does, in the record, indicate that they do look at the picture from every angle. They obviously see the curb and the grass, and based on the picture and based on the evidence that they heard from the multiple witnesses, they found no defect. In this argument, why are we getting hung up on the defect? Let's just follow this proposition for a second. There is clearly no defect in the grass. There's no defect in the curb. What if somebody stepped off, same facts, the height differential was a half a foot and somebody broke an ankle? Would you be saying, hey, there's no defect anywhere here. The grass itself is not inherently defective. The curb is not defective. The fact that somebody falls into a hole six or eight inches down doesn't matter. Is that your position? Your Honor, I believe the Caterpillar analysis is the right analysis in this case. You first determine whether there's a dangerous product that the employer somehow contributed to or had control over, and if that is not present, then you take it to the public to see if this is an area, a type of situation that the public is faced on a day-to-day basis. What's the difference between a defective curb and a dangerous condition on the premises? Does it have to be a defect, as that term is defined? Couldn't there be a dangerous condition? Are you indicating that there was a dangerous condition on the premises? Yes. That's what we're saying. When you go to say dangerous condition, okay, nothing defective about the grass, nothing defective about the curb, but there's a height differential between the two. That could qualify as the dangerous condition. Yes, Your Honor, and I feel you would need evidence to prove that up. Nothing was proven up in this case to show that this height differential was dangerous in any way. No evidence was entered. No objective evidence was entered into court to show how this height differential was dangerous, dangerous to the public, or how in some way it was different than any other curb that the public faces on a day-to-day basis. Okay, so what? With that, Your Honor, again, we find that the commission, again, heard the testimony of all the witnesses in this case. They, again, looked at the picture, the curb itself. This is the picture that the petitioner took herself. This picture was shown to Ms. Wilkes, who identified the picture and said that this is the picture that she inspected, and with that, we find that this is, again, a manifest way standard. It was not against the manifest weight. The petitioner said herself that this was a normal curb, and we find that we ask you to find, to sustain and affirm the circuit court, which also sustained and affirmed the commission. Thank you. Thank you, counsel. Counsel may reply. Thank you, Justice. The proof that did come in that was accepted by the arbitrator was that, and by the commission, was that grass blocked her view or obscured her view of the differential. That's why she tried. The height of the grass. That's exactly right. Yeah. She stepped on it and compressed. She questioned why would someone be surprised grass would compress. Who cares? You know, the fact is it blocked her view of that differential. That's the hazard, or that's the dangerous condition, and that was the proof that was put in. That's the proof she accepted, the arbitrator and the commission accepted. Now, I'm going to be specific here. Okay. Having done a lot of mowing in my life, is the height of the grass even, was it even to the top of the curb? It was not. Was it higher? Do we know? Do we know? We don't know, but she said it obscured her view. There's no contrary evidence. The arbitrator and the commission accepted that. That is, that's a manifest weight issue right there, because she found it my favorite on that. So that's why I brought the grass up repeatedly, because this is, who cares what happens to everybody else with every other curb. What happened to my client in this specific event at this specific location at this point in time? The grass obscured her view. That was accepted by the commission. There's no reason to reverse that. You know, so assuming that's true, that is exactly the dangerous condition that counsel said was not put into evidence. So I think I closed it up in multiple ways. Also, you saw my argument about defects and hazards and whether or not there are really conclusions of law rather than factual, objective factual findings we can make in court or in a factual finding setting. I believe they are constructs of conclusions that we draw from all the facts. They go to duty. The employer's duty to provide coverage to the clients or to the workers. Therefore, they are legal calls on how far duty extends to protect someone. Every time the commission makes a ruling on a risk or a hazard, I would ask you to treat it with the de novo review that it deserves, because it's a conclusion as to whether or not that set of facts, that scenario justifies, as a public policy matter, provision of benefits. Isn't there a risk inherent to crossing a curb every time? Sure. So now the question becomes, was she exposed to a risk that was greater than the everyday risk that all members of the general public are exposed to? Only if you're reversing Dukic today. In Dukic, you told us that defects, hazardous conditions are not neutral risk cases. And as we talked about with Caterpillar earlier. Well, that could be true if your job was to continuously cross a curb every day,  because he has to inspect multiple buildings. But in this particular case, she isn't required to cross a curb as a part of her employment. She was not required, according to the findings, not required to cross a curb to get to her employment. And so the only thing she's doing is she's encountering the risk to which we are all exposed to when we cross a curb. And they made a finding that she was not exposed to it to a greater degree than the general public. So they applied a neutral risk analysis to it. You're right. Here's why that was an improper application of the law. First of all, we don't have a neutral risk, according to Dukic, unless we're reversing Dukic. Caterpillar also told us that the fact that this person has to cross this area to get to their car on a daily basis, twice maybe, that's not relevant to the analysis either. So I think that answers the other point. The other thing is that if now we are going to somehow conclude that she is frolicking and detouring by stepping onto the medium that was there for her so she could get out of her car a little easier, if we're now considering that a frolic and detour, which dislodges someone from their benefits, that is application of another arbitrary barrier against someone's ability to get to what's supposed to be a no-fault application for benefits. So in my case, with the obfuscation by the grass, it was dangerous to her. We know that because she tripped over and went down. There's no dispute about that. So whether it would have been dangerous to you, athletic gentlemen, probably not. I probably would have gotten across the two. She didn't, though. It would be my opinion that says any time an employee is exposed to a risk of any kind, while on their employer's premises, that it's compensable. No, sir. I think you can have a position. I think that's not what I have here. I have grass obscuring her vision. That is what made this a dangerous condition. So, for example, if it was steps like you presented during my initial, steps that were poured normally, I don't know how you could find that to be a compensable risk because they were intended to be that way and we're supposed to look out for ourselves with properly poured steps, right? In this case, the ground level was below this. It was obscured by grass. There's no dispute about that. In my case, it's a dangerous condition. In another curve, maybe the grass doesn't go enough to obstruct. So you're saying that now we're, okay. The height differential, if it were not obscured by grass, would not be a dangerous condition. Well, if we analogize it to steps, probably more. I don't want to analogize it. I'm just taking your words that you're saying the height, the grass obscuring the height differential was the dangerous condition. I like a conclusion that, yes, any height differential is a compensable case. I like that conclusion. If not, you could. Yeah, I know you would. But now you're telling us that it's the grass that obscured the. Well, yeah. Logic would tell me. Your just argument said the height of the grass obscured the differential, which made it a dangerous condition. I was responding to Justice Hoffman's concerns that you might open the floodgates. In my case, I have grass obscuring views. So we can decide this on the lowest common denominator. I mean, here's what my case was. I just want my benefits for my client. How it applies to other things, you can rule 23 if you don't, if you're concerned about the untoward effects in the wake of this decision. You'd even accept a summary order, wouldn't you? I'll take whatever you give me. So we would ask that you give her her tiny case. And thank you. We have a question for you. I'm sorry. Go ahead. Is there an agreement, counsel, when this picture was taken in the record? He told, I don't know when it was. It was taken by my client. That's the one we used at trial, and we agreed that we should let you guys see it. That's why it's there. But not as to when the client took it. Well, her, his witness, Wilk, said that that is the way it, that was the condition it was in on the day of the accident. You have not objected to that. So you say that this is an accurate, complete description of the, of what she encountered on the day of her injury. It's her fault. Yeah, I think so. But, you know, she's. Oh, okay. It's more important what you think. No, no. My thoughts are unimportant. But at trial, you did not object to this as a depiction of what she encountered. Well, I assume that's what we gave to them. The problem is it's difficult to see between the grass and the top of the backside of that curb on that photo. It's kind of flushed out. I don't know. You see a height difference. I don't know. I think so. Okay. Very good. Thank you. Thank you, counsel. Thanks for an interesting case. Thank you, counsel. This will be taken under advisement. Written disposition shall issue.